IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LUCID GROUP USA, INC, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | No. 1:22-cv-01116-RP |
| | § | |
| MONIQUE JOHNSTON, in her official capacity as Director of the Motor Vehicle Division of the Texas Department of Motor Vehicles, DANIEL AVITIA, in his official capacity as Executive Director of Texas Department of Motor Vehicles, and CORRIE THOMPSON, in her official capacity as Director of the Enforcement Division of the Texas Department of Motor Vehicles, | § § § § § § § § § § | |
| *Defendants*. | § | |

_____

**DEFENDANTS' MONIQUE JOHNSTON, DANIEL AVITIA, AND
CORRIE THOMPSON'S MOTION TO DISMISS**
_____

### I.      INTRODUCTION

Lucid's constitutional claims should be dismissed in their entirety because Lucid's preferred business model doesn't dictate Texas law. Despite Lucid's protestations to the contrary, Texas's prohibition against manufacturers owning, operating, controlling, or acting in the capacity as motor vehicle dealers is plainly rational and does not violate the Due Process and Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. ECF No. 1 ("Compl.") ¶¶53-66; Tex. Occ. Code § 2301.476(c).

The prohibition furthers the stated purpose of the law—to ensure a sound system of distributing and selling motor vehicles and to protect Texans from fraud, unfair practices, discrimination, impositions, and other potential abuses. Tex. Occ. Code § 2301.001. Any classification between manufacturer and dealers created by the prohibition represents a reasonable method of pursuing Texas's legitimate objective to regulate the Texas motor vehicle retail market. It is rational for the State of Texas to prohibit manufacturers from selling directly to consumers to reduce the disproportionate market power of manufacturers with respect to dealers thus preventing vertical integration of the motor vehicle retail market, protecting consumers, and ensuring public safety.

Lucid's substantive due process claim fails for the same reason. The Fifth Circuit has held that the prohibition is rationally related to Texas's legitimate interest "to prevent vertically integrated companies from taking advantage of their market position" and "to prevent frauds, unfair practices, discrimination, impositions, and other abuses of [its] citizens." *Ford Motor Co. v. Tex. Dep't of Transp*. 264 F.3d 493, 510 (5th Cir. 2001); *see also Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 718 (5th Cir. 2004). Lucid advocates for this Court to act against judicial restraint and second-guess the Legislature's plausible reasons for regulating the motor vehicle market. Lucid has no authority to support such a demanding review or to seek an exception under Texas law.

The proper question before this Court is whether the prohibition is rationally related to a legitimate state interest. Lucid does not get to rewrite the law simply because Texas does not cater to Lucid's only viable business model. The Constitution only requires equal treatment—not special treatment. Because the Texas Legislature articulated plausible reasons for prohibiting

manufacturers from owning, operating, controlling, and acting as dealers, all Lucid's claims should be dismissed as a matter of law under Federal Rule of Civil Procedure 12(b)(6).

## II.   BACKGROUND

### A.   Lucid's Allegations.

Plaintiff, Lucid Group USA ("Lucid") sues Monique Johnson, in her official capacity as Director of the Motor Vehicle Division of the Texas Department of Motor Vehicles ("TxDMV"), Daniel Avitia, in his official capacity as Executive Director of TxDMV, and Corrie Thompson, in her official capacity as Director of the Enforcement Division of TxDMV (collectively "Defendants") to challenge Texas's prohibition against manufacturers owning, operating or controlling motor vehicle dealerships.

Lucid alleges Texas Occupations Code section 2301.476(c) violates the Equal Protection and Due Process clause of the Fourteenth Amendment to the U.S. Constitution because the prohibition arbitrarily distinguishes between manufacturers and dealers and infringes upon Lucid's right to pursue legitimate business objectives. Compl. ¶¶53-66. Lucid seeks an exception to section 2301.476(c) because Lucid believes its unique business model precludes it from following Texas law. Compl. ¶17.

### B.   Texas Transportation Code & Texas Occupations Code.

Texas's prohibition against motor vehicle manufacturers owning, operating, or controlling dealerships has been on the books since 1971.[1] In 1999, the Texas Legislature strengthened §4.01

---

[1] *See* Act of April 7, 1971, 62nd Leg., R.S., ch. 51, § 4.01, 1971 Tex. Gen. Laws 89 (providing "no person shall engage in business as, serve in the capacity of, or act as a dealer ... in this State ... without obtaining a license therefor as provided in this Act ....")

by enacting §5.02C(c) of the Code.[2] Section 5.02(c) was recodified and enacted as § 2301.476(c) of the Texas Occupations Code in 2003. Section 2301.476(c) generally prohibits manufacturers from owning, operating, controlling or acting in the capacity as a franchised and nonfranchised dealer of motor vehicles.[3] Section 2301.251 requires franchised and nonfranchsied dealers to be licensed. Chapter 503 of the Texas Transportation code also requires all dealers to apply for a Dealer General Distinguishing number ("GDN") for each business location. Tex. Transp. Code § 503.021. This means generally, all retail motor vehicle dealers of new motor vehicles must hold both a dealer's license under Chapter 2301 of the Texas Occupations Code and a General Distinguishing Number issued under Chapter 503 of the Transportation Code to legally sell new and used vehicles from a business location in Texas. *See* Tex. Occ. Code § 2301.251; Tex Transp. Code § 503.021.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft*

---

[2] *See* Act of May 21, 1999, 76th Leg., R.S., ch. 1047, § 5.02(c), 1999 Tex. Gen. Laws 3861, 3877 (providing that "…a manufacturer may not directly or indirectly …own an interest in a dealer or dealership… operate or control a dealer or dealership; or act in the capacity of a dealer").

[3] The statute has permitted few carveouts to the prohibition. For examples, manufacturers who sell a different vehicle type may act as a dealer. *See* Tex. Occ. Code § 2301.476(c)(prohibiting manufacturers who own an interest in, operate or control, or act in the capacity as dealers for the same type of motor vehicle the manufacturer manufactures); 2301.476(a)(2)(defining type of motor vehicles). For example, a manufacturer may manufacture trucks or passenger cars and own a licensed recreational vehicle/travel trailer dealership. Additionally, a manufacturer may own an interest in a franchised dealer or otherwise control a dealer, for no longer than 12 months if the dealership was originally owned by a franchised dealer and the sale was reasonable. Tex. Occ. Code § 2301.476(d).

4

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## IV.   ARGUMENTS & AUTHORITIES

### A.   Lucid's Equal Protection Claim is Barred by Fifth Circuit Precedent.

Lucid's Equal Protection claim fails as a matter of law because the Fifth Circuit has rejected the same arguments furthered by Lucid. Lucid alleges that "Texas's Direct Sales Prohibition" arbitrarily distinguishes between manufacturers without independent franchised dealers and (1) manufacturers' franchises that Texas permits to own and operate motor-vehicle dealerships; (2) "nonfranchised dealers" that Texas permits to own and operate motor-vehicle dealerships; and (3) manufacturers whom Texas law permits to lease or sell motor vehicles to Texas consumers. Compl. ¶63.

To establish a prima facie claim for equal protection Lucid "must prove that similarly situated individuals were treated differently." *Hines v. Quillivan*, 982 F.3d 266, 272–73 (5th Cir. 2020) (internal citations omitted). If individuals are treated differently, the legislative classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Glass v. Paxton*, 900 F.3d 233, 244–45 (5th Cir. 2018). Lucid admits rational basis standard of review is appropriate. Compl. ¶61.

Economic legislation is given wide-latitude — "and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). At the failure-to-state-a-claim stage, "we must treat a legislative classification 'as valid 'if a court is able to hypothesize a legitimate purpose to support the action.'" *Quillivan*, 982 F.3d at 273 (internal citations omitted). "[L]egislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 315, L. Ed. 2d 211 (1993). Because the Fifth Circuit has already applied this analysis in *Ford Motor Co.* to claims substantially similar to Lucid's, there is no basis for this suit to go forward and it must be dismissed in its entirety. 264 F.3d at 510.

        1.    **The Fifth Circuit upheld a rational basis for differential treatment between manufacturers and dealers.**

Taking each classification in turn, Lucid's first and second classifications are foreclosed by Fifth Circuit precedent established in *Ford Motor Co*. Lucid alleges Texas arbitrarily distinguishes between manufacturers and manufacturers' franchisees and "nonfranchised" dealers that are permitted to own and operate motor-vehicle dealerships. Compl. ¶53. Simply stated—Lucid contends Texas's prohibition against manufacturers owning, operating, or acting in the capacity as dealers arbitrarily distinguishes between manufacturers and dealers. The Fifth Circuit has already held that Texas's decision to treat manufacturers and dealers differently is rational: "[f]or the reasons discussed in the dormant Commerce Clause analysis, we 'have no hesitancy in concluding that [§ 5.02C(c)] bears a reasonable relationship to the State's legitimate purpose in controlling the [automobile] retail market....'" *Ford*, 264 F.3d 510 (alteration in original) (quoting *Exxon Corp.*

*v. Governor of Maryland*, 437 U.S. 117, 125 (1978).[4] The Fifth Circuit concluded previously in the dormant Commerce Clause analysis that "[t]he State's asserted purposes for passing § 5.02C(c)—to prevent vertically integrated companies from taking advantage of their incongruous market position and 'to prevent frauds, unfair practices, discrimination, impositions, and other abuses of our citizens'—are legitimate state interests." *Ford*, 264 F.3d 493, 503. Three years later the Fifth Circuit declined to "revisit *Ford's* conclusion that the Legislature did not act irrationally in banning manufacturer control of dealers" in a dormant Commerce Clause challenge to the same recodified statute. *Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 718 (5th Cir. 2004).

Lucid's claim that the distinction between dealers and manufacturers violates equal protection has already been decided and rejected by the Fifth Circuit and should be rejected here.

### 2. Texas law treats all manufacturers the same.

Lucid's third classification does not identify any dissimilar treatment of "manufacturers without independent franchised dealers" and "manufacturers whom Texas law permits to lease or sell motor vehicles to Texas consumers." *See* Compl. ¶63. Lucid's third classification has also been rejected by the Fifth Circuit in *Ford*, 264 F.3d at 510. There Ford argued that the State had no rational basis to justify differential treatment between Ford and another manufacturer General Motors ("GM") under the previous iteration of section 2301.476. *Id*. GM was permitted to operate a website retailing vehicles to Texas consumers while Ford had been prohibited from doing so. *Id*. However Ford could have operated the same website as GM if it too had decided to contract with an independent dealer licensed to sell motor vehicles in Texas. *Id*. Ford could not show how any

---

[4] Section 5.02C(c) of the Motor Vehicle Code was recodified and enacted in an identical provision as section 2301.476(c) of the Texas Occupations Code.

restriction had not been similarly placed on GM. *Id*. All manufacturers were equally prohibited from entering the retail market. *Id*.

Lucid's third classification fails for the same reason. Texas law treats all manufacturers the same regardless of whether they are associated with franchised or non-franchised dealers. All manufacturers are prohibited from selling new and used vehicles directly to consumers from a business location in Texas. *See* Tex. Occ. Code § 2301.476(c)(1)-(3)[5]. Equally, all manufacturers may obtain a lessor's license and lease vehicles directly to consumers. Tex. Occ. Code §2301.476. The Equal Protection Clause "directs that all persons similarly situated be treated alike." *Ford*, 264 F.3d at 510 (quoting *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999)).

To the extent Lucid attempts to differentiate *Ford Motor Co.* because Lucid does not have a network of franchised dealers, this argument fails. Class of one claims require a plaintiff to allege they have been "intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Lucid has plead no facts to support it has been *intentionally* treated differently than any manufacturer or retail dealer. The trial court in *Ford Motor Co.* also determined Ford was unable to establish that The Texas Department of Transportation had "irrationally and intentionally singled Ford out for dissimilar treatment." *Ford Motor Co. v. Tex. Dep't of Transp.*, 106 F. Supp. 2d 905, 910 (W.D. Tex. 2000), aff'd, 264 F.3d 493 (5th Cir. 2001). Lucid has not plead a selective enforcement claim.

---

[5] Some exceptions apply as discussed *supra*—but they apply to all manufacturers. All manufacturers may also sell vehicles online via an out-of-state manufacturer-owned or controlled franchised dealer.

Because Lucid cannot identify any dissimilar treatment amongst manufacturers, its Equal Protection challenge premised on differential treatment between manufacturers fails as a matter of law. F*ord*, 264 F.3d at 510–11 (5th Cir. 2001).

**B.     Lucid's Due Process Claim is Foreclosed by *Ford Motor Co*.**

Lucid's due process claim fails based on the *Ford Motor Co*. Court's holding that regulating manufacturers' direct sales to consumers is rationally related to legitimate state interests—preventing manufacturers from enjoying disproportionate market power and averting fraud and unfair practices against consumers. *Ford*, 264 F.3d at 510. Lucid alleges it has the "right to pursue legitimate business subject only to regulations that are rationally related to the advancement of a legitimate governmental interest." Compl. ¶4.

First, Lucid has failed to identify an interest protected by the U.S. Constitution. In order to prevail on a substantive due process claim, plaintiff must identify a constitutionally protected right. *Simi Inv. Co., Inc. v. Harris Cnty*., Tex., 236 F.3d 240, 249–50 (5th Cir. 2000). Generally "doing business" is not a protected right. *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd*., 527 U.S. 666, 675 (1999) (providing "the activity of doing business, or the activity of making a profit is not property in the ordinary sense"). Because Lucid has no protected right to "pursue legitimate business", Lucid's substantive due process claim should be dismissed as a matter of law. Compl. ¶54.

To the extent this Court acknowledges any interest, review of an economic regulation is limited to whether a rational relationship exists between the regulation "and a conceivable legitimate objective." *Simi Inv. Co.,* 236 F.3d at 251. "If the question is at least debatable, there is no substantive due process violation." *Id.*

This burden has been met. As discussed *supra*, Texas has a legitimate interest in preventing vertically integrated companies from leveraging their superior market position to harm consumers. *Ford*, 264 F.3d at 503. Preventing manufacturers from acting as dealers also guards against fraud and unfair practices. *Id*. It is reasonable for the Legislature to decide that consumers are better protected by dealers who are independent of the manufacturers' control. It is entirely conceivable that prohibiting manufacturers from controlling the entire manufacturing chain and sale would prevent manufacturers from monopolizing the motor vehicle retail market in Texas thus ensuring a competitive marketplace for the Texas consumer. *Id*. Because a rational relationship exists between Texas's prohibition and advancement of the Texas's interest in regulating the retail vehicle market—Lucid's substantive due process claim fails as a matter of law.

C. **Texas's Legislative Choices Regarding the Motor Vehicle Retail Market are Plainly Rational.**

To uphold a legislative classification "a court need find only 'a conceivable rational basis for the official action.'" *Quillivan*, 982 F.3d at 273 (internal citations omitted). The due process clause requires a rational relationship exist between the regulation "and a conceivable legitimate objective." *Simi Inv. Co., Inc.*, 236 F.3d at 251. Texas has met this low burden and the Fifth Circuit agreed—twice.

Lucid unsuccessfully attempts to disprove any conceivable rational basis for the prohibition. Lucid contends prohibiting manufacturers from acting as dealers in practice frustrates the State's ability to protect consumers, operates as a restraint of trade, imposes additional costs to consumers, regulates a power imbalance between manufacturers and franchises that Lucid believes does not exist, and does not further public health and safety. Compl. ¶44-48. Lucid has not—and cannot meet its burden to "negate every conceivable basis which might support the legislation."

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 945 F.3d 206, 225 (5th Cir. 2019). To do so Lucid must show "evidence of irrationality." *St. Joseph Abbey v. Castille*, 712 F.3d 215, 222 (5th Cir. 2013).

Lucid's arguments "rest[] simply on an evaluation of the economic wisdom of the statute." *Exxon*, 437 U.S. at 124. The State "has no obligation to produce evidence to sustain the rationality of a statutory classification." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993). "[L]egislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *Id.* (internal citations omitted). Lucid had not met this high burden to demonstrate no rational basis exists. First, the prohibition is rational; the very language in the statute demonstrates as much. Second, the prohibition is rationally related to Texas's interests by ensuring consumer protection, public health, and safety. Third, the prohibition directly serves to prevent vertical integration, which is also a legitimate State interest.

1.  **The Prohibition is rational.**

Lucid cannot rebut the legitimate state interests the Texas Legislature has outlined that are advanced by regulating who may act as dealers. The Texas Legislature determined "the distribution and sale of motor vehicles in this state vitally affects the general economy of the state and the public interest and welfare of its citizens." Tex. Occ. Code § 2301.001. Regulating who may sell vehicles directly to consumers in Texas is rationally related to the stated purpose of the statute: to ensure a sound system of distributing and selling motor vehicles and to protect Texans from fraud, unfair practices, discrimination, impositions, and other potential abuses. Tex. Occ. Code § 2301.001. The Fifth Circuit agreed "that a reasonable legislator could have believed section 2301.476(c)'s predecessor would further those legitimate interests." *Bray*, 372 F.3d at 728. It is

certainly rational for the Legislature to decide that manufacturers who are vertically integrated may use their market power to hurt consumers, decrease competition within the market, and potentially further fraud. Lucid has not met its high burden to negate the rational basis of the prohibition.

> 2. **The prohibition bears a rational relationship to Texas's interests by ensuring consumer protection, public health, and safety.**

Lucid argues that the prohibition has no rational relationship to preventing unfair or deceptive business practices because Texas law authorizes manufacturers to own and operate dealerships in certain circumstances. Compl. ¶42. Permitting manufacturers to own an interest in a franchised dealer *temporarily* until a new owner is secured furthers the purpose of the prohibition because the manufacturer is only permitted to own an interest in the dealership for a limited period of time. *See* Tex. Occ. Code § 2301.476(e-g). Allowing manufacturers to lease vehicles also does not undermine Texas's legitimate interest in protecting consumers. Compl. ¶42 It is plausible to conclude that the Legislature determined leasing a vehicle exposes a consumer to less inherent risk because the vehicle is owned by the manufacturer. The fact that Texas consumer and public health and safety laws could apply equally to manufacturers and dealers also is not dispositive here. Compl. ¶¶42; 47. The same could be said for any licensing regime. Simply because both manufacturers and dealers could potentially be liable under the Texas Deceptive Trade Practices Act and could potentially incur liability for harming the public health and safety does not render the States's interest in protecting consumers illogical. Compl. ¶43. Finally, the consumers choice to purchase a vehicle from out-of-state dealers does not undermine Texas's interest in protecting consumers. Texas consumers may choose to purchase a vehicle from an out-of-state dealer owned and operated by a manufacturer and take on the risk of doing business outside the state of Texas. Texas cannot prohibit a consumer from doing so. What Texas *can* do is regulate dealers that chose to do business

in Texas. Lucid has not shown that there is any "disconnect" between the prohibition against manufacturers acting as dealers and the Legislature's interest in protecting consumers. *St. Joseph Abbey*, 712 F.3d at 226.

### 3. The prohibition prevents vertical integration.

Lucid next contends the prohibition does not prevent anticompetitive conduct because the prohibition actually operates to restrict trade. Compl. ¶45 The Fifth Circuit has already held that the prohibition is rationally related to preventing vertical integration of the motor vehicle market—a legitimate state interest. To the extent Lucid disagrees with the Legislature's decision, "[t]he Due Process Clause does not empower the judiciary "to sit as a 'superlegislature to weigh the wisdom of legislation' . . .." *Exxon*, 437 U.S. at 124 (*quoting Ferguson v. Skrupa*, 372 U.S. 731 (1963)). It takes little effort to conclude that Texas's legitimate interest in preventing vertical integration in the motor vehicle retail market is reasonably related to prohibiting manufactures from acting as dealers. Manufacturers that control a product from production to sale have complete control over the pricing structure of the product sold. While Lucid contends this will ultimately cut down on the sticker price of a motor vehicle and offer "transparent" pricing it is not unreasonable or illogical for the Legislature to conclude a manufacturer could use vertical integration to increase the price of a motor vehicle and prevent competition in the marketplace. Compl. ¶¶22, 27.

Lucid cannot attack legislative choices it deems are unsuited for its business practice via an equal protection and due process challenge. "Rational-basis review is guided by the principle that we don't have a license to judge the wisdom, fairness, or logic of legislative choices." *Quillivan*,

982 F.3d at 273. This Court should not sit in judgment of the Legislature's rational choices. Because a rational basis exists—all claims should be dismissed in their entirety.

## CONCLUSION

For the foregoing reasons, all of Plaintiffs' claims should be dismissed.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

CHRISTOPHER D. HILTON
Chief - General Litigation Division

*/s/ Caroline A. Merideth*
**Caroline A. Merideth**
Texas Bar No. 24091501
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station, MC-019
Austin, Texas 78711-2548
(512) 463-2120; FAX: (512) 320-0667
caroline.merideth@oag.texas.gov
*ATTORNEYS FOR DEFENDANTS*

## **CERTIFICATE OF SERVICE**

     I hereby certify that a true and correct copy of the foregoing instrument has been served by the court's CM/ECF electronic filing system on the 13th day of January 2023, to all counsel of record.

                                        */s/ Caroline A. Merideth*
                                        Caroline A. Merideth
                                        Assistant Attorney General