IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LUCID GROUP USA, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:22-CV-1116-RP |
| MONIQUE JOHNSTON, et al., | § § § | |
| Defendants. | § § | |

**ORDER**

Before the Court is Defendants Monique Johnston, Daniel Avitia, and Corrie Thompson's ("Defendants")[1] motion to dismiss for failure to state a claim. (Dkt. 24). Plaintiff Lucid Group USA, Inc. ("Lucid") filed a response, (Dkt. 29), and Defendants filed a reply, (Dkt. 32). Having considered the parties' briefs, the record, and the relevant law, the Court will deny the motion.

**I. BACKGROUND**

**A. Lucid's Business Model**

Lucid is a U.S. company that develops, designs, and manufactures electric vehicles ("EVs"). (Compl., Dkt. 1, at 1). In 2021, Lucid commenced commercial production of its first EV, the Lucid Air. (*Id.* at 4). Unlike traditional auto manufacturers, Lucid does not market or sell its vehicles through third-party dealers, but instead sells directly to customers through its website and its network of physical retail stores, known as "Studios." (*Id.* at 5). Lucid operates a service and vehicle-delivery center in Houston, and it plans to open Studios in Texas in the future. (*Id.* at 8).

---

[1] Defendants are officials at the Texas Department of Motor Vehicles ("DMV") responsible for administering and enforcing the statutory regime at issue. (Compl., Dkt. 1, ¶ 32). All are sued in their official capacities only.

For several reasons, Lucid asserts that this "direct-sales" model is the only viable way for it to bring its new vehicles to market. First, Lucid says it depends on the "tight integration of research, development, production, and after-sale service to continuously improve the Air and its technologies." (*Id.* at 5). Lucid also claims that, because many consumers are still unfamiliar with EVs and with Lucid itself, the sales process requires "educating consumers about electric vehicles in general, Lucid's values and experience, its technologies, and its vehicles," all within a "no-pressure" sales environment. (*Id.* at 5-6). Lucid claims that independent dealers lack the knowledge and financial incentive to meaningfully educate customers on its EVs. (*Id.*). Relatedly, because its EVs employ proprietary advanced technologies, Lucid states that third-party dealers are unable to provide the full range of support and service for its vehicles. (*Id.* at 7). Finally, Lucid alleges that selling its EVs through independent dealers would be economically unviable because Lucid's "transparent" pricing model, coupled with the limited number of vehicles it currently sells, would not support the commissions and fee structure required by independent dealers. (*Id.*).

### B. Texas's Statutory Scheme

Texas law regulating new motor-vehicle sales is administered and enforced by the Texas Department of Motor Vehicles ("DMV"). (*Id.* at 8). The overarching goal of this regulatory regime is to "ensure a sound system of distributing and selling motor vehicles" in our state. Tex. Occ. Code § 2301.001. The law defines several categories of businesses involved in the trade of motor vehicles and requires each type of business to obtain a corresponding license to conduct business in this state. *See generally id.* § 2301.002. These categories include "manufacturers," "franchised dealers" (*i.e.*, dealers with a franchise agreement with a manufacturer of motor vehicles), and "nonfranchised dealers." *See id.* § 2301.002(7), (16), (19). It is unlawful to sell motor vehicles from an established and

2

permanent place of business within the state—*i.e.*, to operate a "dealership"—without first obtaining a license from the Texas DMV.[2] *Id.* § 2301.002(8); Tex. Transp. Code § 503.21.

Lucid wishes to sell its EVs directly to customers from its Studios in Texas, but it is ineligible for the required license because state law prohibits auto manufacturers from acting as dealers. (Compl., Dkt. 1, at 10). More specifically, Texas law prohibits an auto manufacturer from owning operating, or otherwise acting in the capacity of either (1) "a franchised dealer or dealership" for the same type of vehicles that it manufactures, or (2) "a nonfranchised dealer." Tex. Occ. Code § 2301.476(c). Lucid contends that this restriction was designed to prevent traditional manufacturers from competing with their own independent dealers, and that it should not apply to "direct-sales-only" manufacturers like Lucid. (Compl., Dkt. 1, at 10). In contrast, Defendants assert that Section 2301.476(c) prohibits *any* manufacturer from doing business as a dealership, irrespective of whether it has existing independent franchised dealers within Texas or anywhere. On that basis, Defendants have determined that Lucid is ineligible to receive a dealership license. (*Id.* at 9-10).

Even though Lucid is unable to sell EVs directly to Texas consumers, it claims that Texas residents have shown strong interest in the Lucid Air. (*Id.* at 8). Currently, Texas residents can only reserve a Lucid Air for purchase through Lucid's website or at one of Lucid's out-of-state Studios licensed to sell directly to consumers. (*Id.*). When the vehicle is ready to be manufactured, the purchase can be completed through one of Lucid's out-of-state licensed Studios. Lucid also performs service, including repair-work and warranty service, for its vehicles at its Houston service

---

[2] Tex. Occ. Code § 2301.251 requires franchised and nonfranchised dealers to be licensed. The Texas Transportation code also requires all dealers to apply for a Dealer General Distinguishing number ("GDN") for each business location. Tex. Transp. Code § 503.021. Accordingly, all retail motor vehicle dealers of new motor vehicles must hold both a dealer's license under Chapter 2301 of the Texas Occupations Code and a GDN to legally sell new and used vehicles from a business location in Texas.

center. (*Id.*). Lucid alleges that, but for Defendants' application of Section 2301.476(c), it would seek to sell new Lucid vehicles to consumers from physical locations in Texas. (*Id.* at 10).

### C. Procedural History

On November 1, 2022, Lucid filed its Complaint challenging Section 2301.476(c)'s application to direct-sales-only manufacturers like itself as violating the Fourteenth Amendment's Due Process and Equal Protection Clauses. (Compl., Dkt. 1, at 15-16). It alleges that the prohibition is "pure economic protectionism for the benefit of Texas's existing auto dealers" and that, as applied to itself and other direct-sales-only manufacturers, it is divorced from any legitimate state interest. (*Id.*) Accordingly, Lucid seeks a declaratory judgment that Section 2301.476(c) is unconstitutional as applied to Lucid and a permanent injunction prohibiting Defendants from enforcing the prohibition against it. Lucid does not challenge Section 2301.476(c)'s facial validity or its general application to manufacturers that already sell through independent dealers. On January 13, 2023, Defendants moved to dismiss the Complaint for failure to state a claim. (Mot. Dismiss, Dkt. 24).

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). "A motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quotation marks omitted).

### III. DISCUSSION

Under the well-established framework for analyzing challenges under the Due Process and Equal Protection Clauses, regulations that do not restrict fundamental rights or implicate suspect classifications are subject to "rational basis" review. *Romer v. Evans*, 517 U.S. 620, 632 (1996). The parties agree that rational-basis review applies here. (Compl., Dkt. 1, at 15-16; Mot. Dismiss, Dkt. 24, at 5-6). This standard affords the government great deference, as the regulation or classification is presumed valid and will be upheld so long as it bears a "rational relation to some legitimate end." *Romer*, 517 U.S. at 631. While the state is free to rely on a "hypothetical rationale, even post hoc," the ends-means connection "cannot be fantasy," and courts need not take a state's justifications at face value where they seem implausible or impermissible. *St. Joseph Abbey v. Castille*, 712 F.3d 215, 223, 226 (5th Cir. 2013).

Although rational-basis review "places no affirmative evidentiary burden on the government, plaintiffs may nonetheless negate a seemingly plausible basis for the law by adducing evidence of irrationality." *Id.* at 223. When a plaintiff provides a court with undisputed context that betrays the otherwise rational basis the state has offered, the state can no longer expect the court's deference. *See Harris Cty. v. CarMax Auto Superstores Inc.*, 177 F.3d 306, 323 (5th Cir. 1999) ("[T]he rational basis test 'is not a toothless one.'") (quoting *Mathews v. Lucas*, 427 U.S. 495, 510 (1976)). At the pleading stage, the inquiry is whether the Complaint, viewed in the light most favorable to Lucid, plausibly negates any rational relation between the prohibition, as applied, and a legitimate state interest. The Court will examine each claim in turn.

### A. Due Process Claim

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To prevail on a claim for substantive due process, the plaintiff must show: (1) a property or liberty interest protected by the Fourteenth Amendment; and (2) the deprivation of that right, which is not rationally related to a legitimate government interest. *Simi Inv. Co., Inc. v. Harris Cnty., Tex.*, 236 F.3d 240, 250–51 (5th Cir. 2000). Pure economic protectionism, unaccompanied by any other legitimate government purpose, is not a legitimate state interest for the purpose of a rational-basis analysis. *See St. Joseph Abbey*, 712 F.3d at 222–23.

#### 1. Protectable Interest

Defendants first argue that Lucid's due process claim should be dismissed for failing to plead a constitutionally protected interest. (Mot. to Dismiss, Dkt. 24, at 9.) Lucid contends that the Due Process Clause protects the "right to pursue legitimate business subject only to regulations that are rationally related to the advancement of a legitimate governmental interest" (Compl., Dkt. 1, at 15), and it notes that courts have previously recognized a protectable liberty interest in the right to

6

contract and to pursue an occupation. (Pl's Resp., Dkt. 29, at 10 n.9) (citing *Meyer v. Nebraska*, 262 U.S. 390 (1923) and *Martin v. Mem'l Hosp. at Gulfport*, 130 F.3d 1143 (5th Cir. 1997)). Defendants argue those cases are inapplicable because they involved individual plaintiffs, whereas Lucid is a corporation. (Reply, Dkt. 32, at 7-8).

It is well established that the liberty protected by substantive due process encompasses an individual's freedom to pursue a chosen profession. *See Martin*, 130 F.3d at 1148 (liberty interest includes "freedom to work and earn a living" (internal quotes omitted)). Denial of a professional license can constitute a deprivation of that interest if the reasons for denial offend due process. *Id.* at 1149 (citing *Schware v. Bd. of Bar Examiners*, 353 U.S. 232, 238–39, (1957)). Defendants cite no authority holding that such interests are not also protectable as to business entities. To the contrary, "[t]ypically, when an individual *or corporation* challenges an economic regulation under the Due Process or Equal Protection Clause," rational basis is triggered. *Ford Motor Co. v. Texas Dept of Transportation*, 264 F.3d 493, 506 (5th Cir. 2001) (emphasis added). And the Fifth Circuit has repeatedly reviewed constitutional challenges to economic regulations brought by non-individual entities. *See, e.g., id.* (corporate plaintiff challenging economic regulation that distinguished between manufacturers and dealers); *Energy Mgmt. Corp. v. City of Shreveport*, 467 F.3d 471, 481 (5th Cir. 2006) (corporate plaintiff challenged economic regulation based on its "legally protected property right" to exploit mineral interests). Most recently, in *St. Joseph Abbey*, the Fifth Circuit applied rational basis scrutiny to a Louisiana state law restricting caskets sales in a challenge brought by an abbey of monks. 712 F.3d at 227. In that case, the court did not explicitly analyze whether the abbey had invoked a protectable interest, but it reiterated the general principle that economic regulations must "not be irrational" or have the sole effect of protecting a favored group. *Id.*

Here, Lucid alleges that it wishes to pursue the legitimate business of "sell[ing] new Lucid vehicles to consumers from established and permanent physical locations in Texas," and that Texas

7

law prevents it from doing so. (Compl., Dkt. 1, at 10). It also alleges that the regulation at issue constitutes "pure economic protectionism" and furthers no legitimate state interest. *Id.* These allegations implicate the same interests asserted by plaintiffs in the above cases in which the Fifth Circuit has applied constitutional review. The Court finds that Lucid has pled a protectable interest sufficient to trigger rational-basis scrutiny.

### 2. *Ford Motor Co. v. Texas Department of Transportation*

Defendants' central argument for dismissal is that, even if Lucid has asserted a protected interest, its due process claim is foreclosed by *Ford Motor Co. v. Texas Dept of Transportation*, 264 F.3d 493 (5th Cir. 2001). In *Ford*, the Fifth Circuit rejected a traditional manufacturer's constitutional challenge to the statutory predecessor of the prohibition at issue in this case.[3] The plaintiff, Ford Motor Company, historically sold cars in Texas through a network of independent franchised dealerships. As an auto manufacturer, it was barred from owning or operating its own physical dealerships in the state. When Ford began marketing cars directly to Texas customers via its new "Showroom" website, DMV officials brought administrative charges against it for operating a dealership without a license. In response, Ford filed suit challenging Section 2301.476(c) on grounds that it lacked any rational basis and violated the dormant Commerce Clause and the Equal Protection Clause. *Id.* at 499-500, 510. The district court rejected Ford's challenge, finding that the law was a rational means "to ameliorate the disparity in power between manufacturers and dealers" that exists because of manufacturers' ability to "control a dealer's supply of vehicles." *Ford Motor Co. v. Tex. Dep't of Transp.*, 106 F. Supp. 2d 905, 910 (W.D. Tex. 2000). On appeal, the Fifth Circuit affirmed the district court, agreeing that Texas has a legitimate interest in "preventing manufacturers from utilizing their superior market position to compete against dealers." *Ford Motor Co.*, 264 F.3d at

---

[3] For clarity, when discussing the prohibition upheld in *Ford*, the Court will refer to Section 2301.476(c) instead of its materially identical predecessor.

504. The court explained that this goal was legitimated by "the perceived detriment to the public from vertical integration of the automobile market." *Id.* at 500. On this basis, the court concluded that a reasonable legislator could believe that the prohibition in Section 2301.476(c) would further these ends. *Id.* at 504. Three years later, the Fifth Circuit again upheld the prohibition on the same grounds. *Int'l Truck and Engine Corp. v. Bray*, 372 F.3d 717 (5th Cir. 2004).

Though undoubtedly relevant, the Fifth Circuit's holding in *Ford* does not foreclose Lucid's claims as a matter of law. To begin, *Ford* involved a facial challenge, and "the facial upholding of a law does not prevent future as-applied challenges." *In re Cao*, 619 F.3d 410, 430 (5th Cir. 2010) (en banc). Here, Lucid explicitly does not challenge application of Section 2301.476(c) in all circumstances, but only against manufacturers that do not sell through independent dealers. Neither *Ford* nor *International Truck* examined this application of the statute.

More importantly, *Ford*'s rational-basis holding is distinguishable at this stage because it focused on the state's interest in preventing franchising manufacturers from competing with their own franchised dealers. This makes sense because, as the district court explained, such manufacturers "control a dealer's supply of vehicles." *Ford Motor Co.*, 106 F. Supp. 2d at 910. Indeed, when affirming the district court, the Fifth Circuit cited to record evidence showing that Ford enjoyed "a superior market position to *its* dealers," explaining:

> Previously, Ford sold these vehicles through closed auctions to its dealers. Ford now selects some of these vehicles and, through [its website], retails the vehicles itself. With respect to these vehicles, Ford seems to remain in a superior market position to its dealers. At least, the evidence is not so one-sided as to lead this Court to believe that the proffered state interests are an excuse to discriminate . . . for the benefit of local industry.

*Ford Motor Co.*, 264 F.3d. at 504 (emphasis added).

In other words, *Ford* establishes that Texas has a legitimate interest in regulating the relationship between franchising manufacturers and independent franchised dealers to address an

9

imbalance in bargaining power between the two. But that rationale has little bearing in the context of Lucid's challenge, which is limited to the law's application against manufacturers that do not utilize independent dealers. Such "direct-sales-only" manufacturers cannot control a dealer's supply of vehicles, which eliminates the central justification cited by the Fifth Circuit in upholding the prohibition. Accordingly, *Ford* does not foreclose Lucid's claims.

### 3. The Complaint Plausibly Negates Any Rational Basis

Because *Ford* is not dispositive at this stage, the Court must analyze whether Lucid plausibly negates any conceivable rational basis for the prohibition. The Court finds that it does.

Defendants argue that the law is rationally related to promoting "consumer protection, public health, and safety." (Mot. Dismiss, Dkt. 24, at 11-12). They contend that it is "reasonable for the Legislature to decide that consumers are better protected by dealers who are independent of the manufacturers' control" because it's conceivable that "prohibiting manufacturers from controlling the entire manufacturing chain and sale would prevent manufacturers from monopolizing the motor vehicle retail market in Texas," thus ensuring a more competitive marketplace. (*Id.* at 10). But Defendants do not specifically explain how ensuring a competitive marketplace, by itself, advances consumer protection, public health, or safety. Nor do they explain why this logic applies to direct-sales-only manufacturers, who could only ever "monopolize" retail sales of their own vehicles.

On the other hand, the Complaint sets forth several allegations negating the "fit" between these legislative goals and the law at issue. First, Lucid contends that these asserted interests are undermined by the fact that Texas law already allows it to perform a wide variety of public-facing services with equal consumer-protection implications. These include the ability to "lease and rent vehicles, sell previously leased or rented vehicles, service vehicles (including providing warranty service), and even sell new vehicles to Texans through out-of-state manufacturer-owned dealerships." (Compl., Dkt. 1, at 9-10). Defendants counter that there could be valid reasons to

10

allow for these carveouts without undermining consumer protection. For example, they claim that a reasonable legislator could have "determined [that] leasing . . . exposes a consumer to less inherent risk [than selling] because the vehicle is owned by the manufacturer." (Mot. Dismiss, Dkt. 24, at 12).

Lucid also observes that Texas already has other consumer-protection and safety laws that would apply to dealerships regardless of whether they are independent or manufacturer-owned. (Pl's Resp., Dkt. 29, at 10-11). Defendants acknowledge the existence of other generally applicable laws but argue they are "not dispositive" on whether Section 2301.476(c) is rationally related to the same ends. (Mot. Dismiss, Dkt. 24, at 12). Even if not dispositive, the existence of other applicable consumer-protection and public-safety laws can undermine the asserted relationship between these legislative goals and the law at issue. *See St. Joseph Abbey*, 712 F.3d at 226 (observing that "Louisiana's consumer protection regime reaches the sales practices of all intrastate sellers of caskets and can strike at any unfair practices".) That is especially true where, as here, the very statute at issue contains separate provisions that specifically address consumer fraud. *See, e.g.*, Tex. Occ. Code § 2301.651 (allowing for revocation of dealership license for, among other things, "willfully defraud[ing] a purchaser").

Finally, Lucid alleges that the prohibition, as applied, irrationally undermines consumer protection and safety because it forces Texas consumers to purchase Lucid vehicles from dealerships located outside of the state and away from regulatory oversight. (Compl., Dkt. 1, at 11). Defendants respond that they "cannot prohibit a consumer" from "tak[ing] on the risk of doing business outside the state of Texas." (Mot. Dismiss, Dkt. 24, at 12). But this ignores the central point that, but for Section 2301.476(c), consumers would not have to make that choice in the first place.

Finally, Lucid alleges that, as applied, the ban does not advance consumer welfare because it "limit[s] access to the Texas market by manufacturers like Lucid that employ the direct-sales-only model." (Compl., Dkt. 1, at 11-12). According to Lucid, the law actually "drives up costs and prices"

by requiring manufacturers to interpose an independent middleman between themselves and consumers. (*Id.*) In further support, the Complaint cites recent commentary by Federal Trade Commission officials and academics describing the anti-competitive effects of banning the "direct distribution of EVs." (*Id.* at 13-15). Citing the Fifth Circuit's opinion in *Ford*, Defendants respond that the prohibition promotes competition and consumer welfare because "a manufacturer could use vertical integration to increase the price of a motor vehicle and prevent competition in the marketplace." (Mot. Dismiss, Dkt. 24, at 12). But, as noted, *Ford* focused on preventing unfair competition by manufacturers that controlled their franchised dealers' vehicle supply—the potential for that kind of "vertical integration" is absent here. Moreover, this argument ignores the obvious point that, currently, there *are* no Lucid EVs being sold by Texas dealerships because Lucid doesn't utilize independent dealers. In this circumstance, it is difficult to conceive how permitting a new market entrant to begin selling its own EVs directly to Texas customers could possibly "increase the price" of those cars or somehow "prevent competition" in the marketplace.

Viewing the Complaint's allegations in a light most favorable to Lucid, the Court finds that the Complaint sets forth sufficient facts negating the rational connection between Section 2301.476(c), as applied, and the legitimate interests articulated by Defendants. At this stage, Lucid's due process claim is at least plausible.

### B. Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985.) Under the rational-basis standard, a legislative classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Glass v. Paxton*,

900 F.3d 233, 244–45 (5th Cir. 2018) (quotation omitted). At the pleading stage, courts must treat a legislative classification as valid "if a court is able to hypothesize a legitimate purpose to support the action." *Id.* (internal citations omitted). "Although the legitimate purpose can be hypothesized, the rational relationship must be real." *Mahone v. Addicks Utility Dist. of Harris County*, 836 F.2d 921, 937 (5th Cir. 1988).

Lucid alleges that Section 2301.476(c), as applied, arbitrarily distinguishes between direct-sales-only manufacturers on the one hand, and three separate classes on the other hand: (1) franchised dealers; (2) "nonfranchised dealers"; and (3) manufacturers whom Texas law permits to lease or sell motor vehicles to Texas consumers. (Compl., Dkt. 1, at 16). Defendants argue that Lucid, in essence, seeks to challenge the same manufacturer/dealer classification previously upheld by the Fifth Circuit in *Ford*. (Mot. Dismiss, Dkt. 24, at 13). But Lucid's claim is more nuanced. As noted above, the classification examined in *Ford* was between franchising manufacturers and their dealers. *See Ford Motor Co.*, 264 F.3d. at 504. The court deemed that classification to be rational because of the unequal bargaining power that inheres between those groups. *Id.* In contrast, Lucid has plausibly alleged that, as a direct-sales-only manufacturer, it is not similarly situated to franchising manufacturers because it does not utilize independent dealers. Accordingly, Lucid's claim is not foreclosed by *Ford*.

Defendants' remaining arguments rely on the same justifications raised in response to Lucid's due process claim. As discussed above, though, those justifications are subject to discovery and a decision on the merits. The equal protection claim may proceed.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Defendants' motion to dismiss (Dkt. 24) is **DENIED**.

**SIGNED** on June 21, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE