IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| LUCID GROUP USA, INC., <br>  *Plaintiff*, <br><br> v. <br><br> MONIQUE JOHNSTON, in her official capacity as Director of the Motor Vehicle Division of the Texas Department of Motor Vehicles, DANIEL AVITIA, in his official capacity as Executive Director of the Texas Department of Motor Vehicles; and CORRIE THOMPSON, in her official capacity as Director of the Enforcement Division of the Texas Department of Motor Vehicles, <br>  *Defendants*, <br><br> TEXAS AUTOMOBILE DEALERS ASSOCIATION, <br>  *Intervenor-Defendant*. | Case No. 1:22-cv-01116-RP |

**INTERVENOR-DEFENDANT TEXAS AUTOMOBILE DEALERS ASSOCIATION'S REPLY BRIEF IN SUPPORT OF MOTION TO EXCLUDE AND/OR LIMIT THE TESTIMONY OF FIONA SCOTT MOTON**

                  Robert T. Mowrey
                    Texas Bar No. 14607500
                    *rmowrey@lockelord.com*
                  Thomas G. Yoxall
                    Texas Bar No. 00785304
                    *tyoxall@lockelord.com*
                  W. Scott Hastings
                    Texas Bar No. 24002241
                    *shastings@lockelord.com*
                  Daron L. Janis
                    Texas Bar No. 24060015
                    *djanis @lockelord.com*
                  LOCKE LORD LLP
                  2200 Ross Avenue, Suite 2800
                  Dallas, Texas 75201-6776

                  **ATTORNEYS FOR TEXAS AUTOMOBILE DEALERS ASSOCIATION**

1

Intervenor-Defendant Texas Automobile Dealers Association ("TADA") submits this reply brief in support of its motion to exclude Plaintiff Lucid Group, USA, Inc.'s ("Lucid") proffered expert, Fiona Scott Morton ("Morton").

1. Lucid's Response filed on February 16, 2024 at ECF 71, (the "Response" or "Resp.") admits that Morton's opinions in this case are based on "economic theory," and not on any study of the facts or real-world data. Resp. at 1 & 4. TADA has not challenged Morton's qualifications or credentials to teach economic theory. TADA challenges the use of Morton's opinions in court because it is well-settled that opinions do not become admissible based solely on the *ipse dixit* of an expert, regardless of her credentials. *See General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"). Experts do not get a free pass from scrutiny under Rule 702 and *Daubert* just because this case will be tried as a bench trial. *See, e.g., Smith v. City of Bastrop*, 2021 WL 148061, *3-8 (W.D. Tex. Jan. 15, 2021); *Perez v. Texas*, 2014 WL 12480146, *1-2 (W.D. Tex. July 9, 2014); *Thomas v. City of Cedar Park*, 2008 WL 11416959, *2 (W.D. Tex. June 3, 2008).

2. Despite Lucid's admissions that "economic viability" is not relevant to its claims in this case, Lucid tries to salvage Morton's economic theory-based opinions by accusing TADA of making economic viability a relevant issue. But Lucid has the facts and timeline exactly backwards. *See* Resp. at 5-6 (arguing that Lucid raised this issue "to rebut TADA's assertions"). TADA addressed this issue in response to Lucid, which raised it first. *See* ECF 1 (Lucid Compl. at ¶27 alleging "Lucid has determined that the direct-sales model is the only viable way …" & "establishing a network of independent franchised dealers is not economically viable"); ECF 4 (Lucid MSJ at 4 ("The only viable course was for Lucid to sell its vehicles directly to consumers. Scott Morton Decl. ¶16")); ECF 4-1

(Morton Decl. Section IV arguing "An Independent Lucid Dealer Would Not Be Economically Viable."). Lucid raised its economic viability arguments, including using Morton's unsupported opinions, long before TADA had even intervened in this case. *See* ECF 17 (TADA Motion to Intervene) & ECF 36 (Order Allowing Intervention). Then, when TADA requested discovery to explore this issue, Lucid quickly retreated to try to avoid answering economic questions on this very topic. In the words of its counsel at a discovery hearing, it may have "over egged the pudding," yet notably, Lucid has never withdrawn or offered to withdraw its own and Morton's self-serving assertions on economic viability. If Lucid truly has abandoned the economic viability issue it raised in its initial pleading (as it claims it has done to avoid discovery), then Morton's economic theory-based opinion is irrelevant and should be excluded on that basis.

3. On the merits of "economic viability," Lucid cites to the "four profit centers for independent dealers." Resp. at 7. But Lucid confirms that Morton did not conduct a single study of these issues. Indeed, for the first two—new car sales and used car sales—Morton relies on what "Lucid <u>would</u> sell" and "what Lucid <u>would</u> permit." Resp. at 8 (emphasis added). Thus, she is not offering an independent opinion. Morton is just using her Ivy League credentials to try to add credibility to what Lucid determined it would do in the future. Notably, she offers no answer to why, even if Lucid wanted uniform retail prices, it would not adjust wholesale prices to dealers to account for the services that dealers would perform on Lucid's behalf. *See* Resp. at 13 (continuing to conflate retail and wholesale prices). Morton also does not explain how Lucid could dictate and deprive dealers of the traditional avenue for earning revenue based on trade-ins and used car sales. Finally, Lucid completely misses the point on page 11 when it argues that the differences between gas and electric vehicles is why Lucid could not simply team up with Lamborghini. Lucid does not explain why it does not team up with others selling electric vehicles, including Aston Martin, with whom

3

Lucid publicly acknowledges it has entered into a technology sharing agreement. *See Aston Martin and Lucid to Collaborate on New Range of EVs*, Car and Driver (June 26, 2023).[1] There are other options too. The point here, as on the rest of her opinions, is that Morton conducted no study of the facts that impact the competing sales models.

4. On page 4 of its Response, Lucid highlights the materials that Morton allegedly reviewed in this case, which included "filings in this case, public documents providing background information on Lucid, and academic" publications. Resp. at 4. However, Morton only selectively reviewed materials supporting her already formed opinions and did not review the extensive public record regarding issues relating to EV manufacturers and conflicts of interest with consumers, some of which TADA cited in its motion. Morton does not even address the reports of her frequent client, Tesla, prioritizing manufacturing profits over customer repairs, which highlights the conflict of interest that Texas law tries to avoid. *See* Rebecca Heilweil, *Missing Parts, Long Waits, and a Dead Mouse: The Perils of Getting a Tesla Fixed*, Vox at 3 (Aug. 24, 2022) (attached by Tesla as Ex. F, ECF 135-7, Case No. 3:23-cv-01145-TLT, *Lambrix v. Tesla, Inc.*, (N.D. Cal. Dec. 22, 2023)). Thus, Morton has relied upon an inadequate foundation to offer the opinions she seeks to present.

5. Lucid tries to defend Morton's speculative opinion that manufacturers have the same incentives as dealers to protect consumers with respect to warranty repair issues. However, she never addresses the economics of the conflict of interest created by the fact that warranty repairs are an expense for manufacturers, not dealers. Morton offers no response to recent reports confirming the conflict of interest is real. *See, e.g., id.* She also has no response to the historical experiences showing manufacturers putting their own profit interests ahead of consumers, such as in the infamous Ford Pinto situation. *See* American Museum of Tort Law, discussing *Grimshaw v. Ford Motor Co.* (1981)

---

[1] Available at: https://www.caranddriver.com/news/a44348402/aston-martin-lucid-partnership-evs/.

(available at https://www.tortmuseum.org/ford-pinto/).[2] Instead, Morton argues that dealers have the same profit motive as manufacturers, but she is missing the point with respect to warranty repairs. The dealers' profit motive is aligned with the consumers' best interest, whereas the manufacturers' incentive is not. Given that warranty repair issues are not dealer expenses, the dealer is in a position to advocate on behalf of the consumer. Denying consumer repairs does not earn profits for a dealer, but it would increase manufacturer profits by avoiding the manufacturer's expense. This conflict highlights why it is rational for legislators to prefer to have a dealer network in place to advocate on consumers' behalf against manufacturers relating to warranty repairs.

6. Although the parties disagree over whether Texas law even allows manufacturers to perform warranty repairs,[3] *see* 43 TEX. ADMIN. CODE §215.103(a) & (c) (limiting repairs to dealers) & ECF 66 (TADA Supplemental Brief explaining Texas legal requirements), even if manufacturers could perform warranty repairs on their own, it is also rational for legislators to want to make sure that consumers have a non-manufacturer dealer network in place to perform such repairs without

---

[2] Morton acknowledged knowing generally about the problems associated with the Ford Pinto, but she did not study it. Resp. Ex. 2, Morton Dep. at 101:18-21. Morton also cited another example of manufacturers in Europe engaging in fraudulent practices relating to diesel vehicles, which was conduct adverse to consumers. Morton Dep. at 101:4-17. She acknowledged that there could be other examples because "I haven't made a list." Morton Dep. at 101:17.

[3] In its Response, Lucid tries to use the testimony of Dr. House to support Lucid's incorrect legal conclusions about what Texas law allows. Resp. at 7 n.3 (citing House Dep. 23-29). Dr. House is not a lawyer or legal expert. He is not being offered to opine on the legal requirements of Texas law. Nor would such legal testimony be permissible, which is why TADA objected to Lucid's inappropriate questions to Dr. House, which called for legal conclusions. *See* House Dep. at 25:4-5 & 14-15; *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *United States v. Izydore*, 167 F.3d 213, 218 (5th Cir. 1999). In context, Dr. House's testimony addressed what Lucid was purportedly doing in Texas, and not whether Lucid was acting in violation of Texas law. Tellingly, although Lucid cites Dr. House's alleged testimony, it ignores Morton's clear statement that her understanding is that Texas law does not allow manufacturers to perform warranty repairs. *See* Resp. Ex. 2, Morton Dep. at 118:21-119:5.

Lucid also tried to use its own self-serving admission answers to support its position. Resp. at 7 n.3 (citing Admission No. 17). Of course, a party may not use its own unsworn admission responses as evidence to support its case. Those admission responses are inadmissible hearsay when offered by the party making the statement. *See* MOORE'S FEDERAL PRACTICE (CIVIL) §36.03[2] ("It is only when an admission is offered against the party who made it that the admission is defined as a non-hearsay admission of a party opponent").

having to rely on the manufacturers to do so given the history and economic incentives for manufacturers not to perform some repairs. Consumers should have a choice *not* to rely on manufacturers for their warranty repair needs. And once legislators recognize that performing warranty repairs is an important role for dealerships (regardless whether it is an exclusive role—even though it should be under existing Texas law), the *Ford* fact pattern is present with the potential for competition (and unfair competition) between manufacturers and dealers if the manufacturer is also trying to sell its vehicles direct to consumers. The Fifth Circuit has already held the Texas law restricting manufacturers from selling direct to consumer is rational and constitutional under the circumstances. *See Ford Motor Co. v. Texas Department of Transportation,* 264 F.3d 493 (5th Cir. 2001). Accordingly, even if Lucid were able to provide warranty repair services in Texas, it is rational for the state to prohibit Lucid from selling motor vehicles direct to consumers.

7. When Lucid highlights the fact that Morton has testified before Congress and the Federal Trade Commission, Resp. at 3, Lucid ignores the fact that it is offering Morton's opinions to this Court without having ever presented them to the Texas Legislature for consideration. Morton Dep. at 70:1-71:12.

The Court should grant TADA's motion to exclude and/or limit Morton's testimony.

Respectfully submitted,

*/s/ Robert T. Mowrey*
Robert T. Mowrey
 Texas Bar No. 14607500
 *rmowrey@lockelord.com*
Thomas G. Yoxall
 Texas Bar No. 00785304
 *tyoxall@lockelord.com*
W. Scott Hastings
 Texas Bar No. 24002241
 *shastings@lockelord.com*
Daron L. Janis
 Texas Bar No. 24060015
 *djanis@lockelord.com*
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-6776
Telephone: (214) 740-8000
Facsimile: (214) 740-8800

**ATTORNEYS FOR TEXAS AUTOMOBILE DEALERS ASSOCIATION**

**CERTIFICATE OF SERVICE**

I certify that on February 22, 2024, a true and correct copy of this document is being served on all counsel of record via the Court's electronic filing system.

*/s/ Robert T. Mowrey*
Robert T. Mowrey