IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| LUCID GROUP USA, INC., §<br>*Plaintiff* §<br>§<br>v. §<br>§<br>§<br>MONIQUE JOHNSTON, et al., §<br>*Defendants* §<br>§<br>TEXAS AUTOMOBILE DEALERS §<br>ASSOCIATION, §<br>*Intervenor-Defendant* § | CASE NO. 1:22-CV-01116-RP |

**ORDER**

Now before the Court are Intervenor-Defendant Texas Automobile Dealers Association's Motion to Exclude and/or Limit the Testimony of Fiona Scott Morton and Brief in Support, filed February 5, 2024 (Dkt. 65); Plaintiff's Response in Opposition to Intervenor-Defendant's Motion to Exclude and/or Limit the Testimony of Dr. Fiona Scott Morton, filed February 16, 2024 (Dkt. 71); and Intervenor-Defendant's Reply Brief in Support of Motion to Exclude, filed February 22, 2024 (Dkt. 72).[1]

**I. Background**

Plaintiff Lucid Group USA, Inc. brings this suit challenging the constitutionality of a Texas statute that prohibits Lucid from owning or operating new car dealerships in the State of Texas. Lucid is a California-based manufacturer of electric cars. Complaint, Dkt. 1 ¶ 1. Unlike traditional automobile manufacturers, Lucid does not have independent franchised dealers; instead, it markets its cars directly to consumers through its website and a network of "Lucid-owned studios." *Id.*

---

[1] By Text Order issued April 4, 2024, the District Court referred the motion to this Magistrate Judge for disposition, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. The District Court also referred the parties' motions for summary judgment (Dkts. 77-79), which will be addressed in a report and recommendation.

1

¶ 19. Lucid contends that the direct-sales model "is the only viable way for it to bring its new vehicles to market," explaining: "As a startup still building production capacity and consumer awareness, Lucid's sales at this time are limited and would not support a network of independent franchised dealers and the earnings, commissions, or other payments that franchised dealers would require to enter into business." *Id.* ¶ 27.

Lucid operates a Studio in Plano, Texas, and a service and delivery center in Houston. *Id.* ¶ 29. Lucid plans to open more studios in Texas. *Id.* While customers in Texas can order a car from Lucid's website or at a Lucid-owned Studio in another state, they cannot buy a car directly from Lucid at a Lucid Studio in Texas because Texas law prohibits automobile manufacturers from "directly or indirectly" owning or operating "a franchised dealer or dealership . . . for the same type of motor vehicle that . . . the manufacturer manufactures or distributes." TEX. OCC. CODE § 2301.476(c) ("Statute" or "Prohibition"). The Motor Vehicle Division of the Texas Department of Motor Vehicles ("DMV") is responsible for enforcing the Statute. The DMV has interpreted the Statute to bar manufacturers without independent franchised dealers from owning, operating, or otherwise controlling motor-vehicle dealerships in Texas. *Id.* ¶ 36.

Lucid argues that the provision is intended to prevent manufacturers from competing with their own franchised dealers. Dkt. 77 at 9. Lucid alleges that the DMV informed it in 2021 that Section 2301.476(c) prohibits it from selling new Lucid cars directly to customers or "from owning or opening a motor-vehicle dealership within the State of Texas." Dkt. 1 ¶ 37.

On November 1, 2022, Lucid sued DMV Motor Vehicle Division Director Monique Johnson, Executive Director Daniel Avitia, and Enforcement Division Director Corrie Thompson in their official capacities. Lucid alleges that Defendants' enforcement of Section 2301.476(c), as applied against it, violates Lucid's rights under the Due Process and Equal Protection Clauses of the

Fourteenth Amendment. Lucid contends that the Statute violates its due process rights because is not rationally related to the advancement of any legitimate government interest and "is pure economic protectionism for the benefit of Texas's existing auto dealers." *Id.* ¶ 3. Lucid also argues that: "By prohibiting affiliates of manufacturers without independent franchised dealers like Plaintiff from owning or operating new motor-vehicle dealerships in Texas, Texas's Direct-Sales Prohibition arbitrarily distinguishes between classes that are similarly situated in all material respects" in violation of the equal protection clause. *Id.* ¶ 63. It seeks a declaratory judgment that Section 2301.476(c) is unconstitutional as applied to it and a permanent injunction prohibiting Defendants from enforcing the Statute against it.

On December 20, 2022, the Texas Automobile Dealers Association ("TADA"), a trade association representing franchised new motor vehicle dealers in Texas, moved to intervene as a defendant "to advocate in support of the constitutionality of the State's statutes and regulations relating to the sale and distribution of motor vehicles to Texans through its franchise-based system." Dkt. 17 at 6. The District Court granted TADA's motion to intervene under Rule 24(b). Dkt. 36. Intervenor-Defendant TADA now moves to exclude the testimony of Lucid's economics expert under Federal Rule of Evidence 702.

## II. Legal Standard

Rule 702, which governs the admissibility of expert testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert's opinion reflects a reliable application of the principles
> and methods to the facts of the case.

The Supreme Court's landmark case *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), supplies the analytical framework for determining whether expert testimony is admissible under Rule 702. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002). *Daubert* requires district courts to act as "gatekeepers" to ensure expert testimony meets the standards of Rule 702. *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). Under *Daubert*, a district court must first "be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (citing FED. R. EVID. 702). Once the court determines that an expert is qualified, it must ensure that the expert's testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597; *see also Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019) ("When evaluating expert testimony, the overarching concern is generally whether the testimony is relevant and reliable.").

> To be reliable, expert testimony must be grounded in the methods and procedures of science and be more than unsupported speculation or subjective belief. To be relevant, the expert's reasoning or methodology must be properly applied to the facts in issue.
>
> When performing this analysis, the court's main focus should be on determining whether the expert's opinion will assist the trier of fact. Assisting the trier of fact means the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument. As this court has noted, however, the helpfulness threshold is low: it is principally a matter of relevance.
>
> As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility. . . . While the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, the rejection of expert testimony is the exception rather than the rule.

*Puga*, 922 F.3d at 293-94 (cleaned up). A trial court has broad latitude in determining admissibility under Rule 702. *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013).

### III. Analysis

Because this case will be tried to the District Court, not a jury, "most of the safeguards provided for in *Daubert* are not as essential." *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000); *see also Whitehouse Hotel Ltd. P'ship v. Comm'r*, 615 F.3d 321, 330 (5th Cir. 2010) ("[T]he importance of the trial court's gatekeeper role is significantly diminished in bench trials . . . because, there being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence.").

**A. Expert Report**

As stated, Lucid alleges that Defendants' enforcement of Section 2301.476(c) against it violates its substantive due process and equal protection rights. Under the well-established framework for analyzing challenges under the Due Process and Equal Protection Clauses, regulations that do not restrict fundamental rights or implicate suspect classifications are subject to "rational basis" review. *Romer v. Evans*, 517 U.S. 620, 632 (1996).

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To prevail on a claim for substantive due process, the plaintiff must show (1) a property or liberty interest protected by the Fourteenth Amendment, and (2) the deprivation of that right, which is not rationally related to a legitimate government interest. *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996).

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Under the rational basis standard, a legislative classification "must be upheld against equal protection challenge if there is

any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).

Lucid alleges that applying Section 2301.476(a) against it violates its due process rights because there is no legitimate state interest for the law as applied. Lucid contends that the Prohibition "irrationally *undermines* Texas's interest in consumer welfare (by imposing arbitrary costs and burdens on consumers and reducing competition for their business) and its interest in consumer protection (by channeling vehicle sales through out-of-state dealerships beyond the reach of Texas law and law enforcement)." Dkt. 82 at 12. Lucid argues that the Prohibition is "purely protectionist" and "serves only to advance the private interests of TADA's members—incumbent dealers—by shielding them from having to compete on a level playing field with new market entrants like Lucid, to the detriment of Texas consumers and the state itself." *Id.* Lucid contends that Texas has no rational basis to prohibit it from owning or operating a dealership in the state "when Texas permits Lucid to lease and rent vehicles to Texans from within Texas, to sell previously leased and rented vehicles to Texans from within Texas, to sell new vehicles to Texans from out of state, to service its vehicles in Texas, and to operate galleries and offer demonstration drives in the state." Dkt. 77 at 13. Lucid alleges that Section 2301.476(c), as applied to it, violates its equal protection rights because it arbitrarily distinguishes between direct- sales-only manufacturers and (1) franchised dealers, (2) "nonfranchised dealers," and (3) manufacturers, all of which may lease or sell motor vehicles to Texas consumers. Dkt. 1 ¶ 63.

In support of these claims, Lucid retained economist Dr. Fiona Scott Morton, Ph.D., as an expert witness to prepare a report "to explain the economic harm that results from Texas's ban on direct sales of automobiles by their manufacturers and absence of any economic basis for

application of that ban to manufacturers like Lucid that do not utilize independent dealers."[2] Dkt. 65-1 at 4. Scott Morton opines in her report that:

> (1) "an independent Lucid dealer would not be economically viable" and "Texas's requirement that Lucid sell its cars through an independent dealer effectively bars it from selling in the state";
>
> (2) "the unambiguous effect of Texas's law barring direct sales of cars by auto manufacturers is to stifle competition, harm consumers, and create an artificial barrier to the entry of new companies and technologies into the automobile market"; and
>
> (3) "allowing Lucid to operate sales Studios in Texas and sell direct to Texas consumers would have a positive effect on consumers as it would increase consumer choice and eliminate the risk of double marginalization."

*Id.* at 14. To prepare her report, Scott Morton reviewed filings in this case, her previous research on retail sales and the dealership model in the automotive industry, and academic articles and publicly available information concerning Lucid, its retail strategy, and the economics of automobile distribution. *Id.* at 6.

While TADA does not dispute that Scott Morton is a qualified economist, it argues that the Court should strike her testimony under Rule 702 because her economic opinions are speculative, unreliable, and irrelevant to Lucid's constitutional claims.

---

[2] Scott Morton received a Ph.D. in Economics from Massachusetts Institute of Technology in 1994 and is the Theodore Nierenberg Professor of Economics at the Yale University School of Management, where she has been a professor since 1999. Dkt. 65-1 at 4, 17. Scott Morton teaches courses on competitive strategy, and her research focuses on empirical studies of competition among firms in areas such as pricing, entry, and product differentiation. *Id.* at 4.

**B. Relevance**

Expert testimony is admissible only if it is relevant to the issues in the case. *Puga*, 922 F.3d at 285. To be relevant, "the expert's reasoning or methodology must be properly applied to the facts in issue." *Id.* Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. "The Rule's basic standard of relevance thus is a liberal one." *Daubert*, 509 U.S. at 587.

TADA contends that Lucid "has admitted that the economic testimony Lucid seeks to offer in this case is not relevant" because it responded in the affirmative to TADA's Request for Admission No. 1: "Admit that the economic necessity of the direct-to-consumer sales for Lucid's business model has nothing to do with the rationality of the prohibition at issue in this case." Dkt. 65-22 at 2-3. But TADA ignores the rest of Lucid's response to that Request for Admission:

> Whether it was rational for Texas to prohibit direct-sales-only manufacturers from selling to consumers through dealerships in the State is not answered by an examination of Lucid's finances. The answer to that question turns on the connection between the prohibition and the State's proffered interests. As Lucid stated in its Complaint, Lucid operates a direct-to-consumer model and has no intention of ever entering into a franchise agreement with any independent dealer. The state has no interest in determining whether Lucid's chosen model makes economic sense for Lucid. Instead, the question in this case is resolved by whether the Texas Prohibition furthers the State's legitimate interests. The ban clearly does not; among other things, the ban undermines consumer choice by prohibiting certain manufacturers from selling automobiles within the state of Texas.

*Id.* Lucid did not concede that the economic opinions it seeks to offer are irrelevant to the issues in dispute. Instead, it alleges in its Complaint and pleadings that Section 2301.476(c) is not rationally related to a legitimate government interest because it is based on economic protectionism. The Court finds that Scott Morton's testimony is relevant to Lucid's claims.

TADA and Defendants also put such economic matters at issue. For example, TADA argues in its motion for summary judgment that there are rational reasons to support the Statute, including economic purposes such as promoting competition and protecting consumers. Dkt. 79 at 25-26. Defendants also argue in their motion for summary judgment that the Prohibition passes rational basis review because it promotes competition in the marketplace and prevents fraud, waste, and abuse. Dkt. 78 at 18, 25. And TADA has retained its own economic experts, Donald House and Edward Stockton, who prepared expert reports opining on the legitimate economic reasons for the Statute. *See* Dkts. 71-1, 71-4.

In light of Lucid's claims alleged in its Complaint and the arguments by Defendants and TADA against those claims, Scott Morton's testimony on the alleged economic harm from the enforcement of Section 2301.476(c) and the alleged absence of any economic basis for the Statute is relevant to the central issues here. S*ee St. Joseph Abbey v. Castille*, 835 F. Supp. 2d 149, 155 (E.D. La. 2011), *aff'd*, 712 F.3d 215 (5th Cir. 2013) (relying on expert testimony from economist who testified on "the economics of national funeral markets and the national market for third party casket sales" in finding that state statute violated plaintiffs' due process and equal protection rights because it was not rationally related to government interest).

## C. Reliability

Finally, TADA argues that Scott Morton's opinions on double-marginalization, manufacturing costs, and that an independent Lucid dealer would not be viable are unreliable and unsupported because she did not conduct sufficient studies or analysis to support them. But at this stage, Lucid "need not prove that the expert's testimony is correct." *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 850 (5th Cir. 2015). The Court declines to follow TADA's approach by reviewing Scott Morton's report "line-by-line in order to render a conclusion on the merits of [her] opinions.

Such is the purpose of a trial, not a *Daubert* motion." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, No. 1:15-CV-134-RP, 2017 WL 11715451, at *4 (W.D. Tex. May 22, 2017). At trial, TADA can employ the ordinary tools of the adversary process, including cross-examination and rebuttal evidence, to expose any deficiencies in Scott Morton's testimony. *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Because TADA's concerns with the reliability of Scott Morton's opinions go to the weight properly afforded her testimony, not its admissibility, TADA's Motion to Exclude must be denied. *See Puga*, 922 F.3d at 294 ("[Q]uestions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility.").

## IV. Conclusion

The Court **DENIES** Intervenor-Defendant Texas Automobile Dealers Association's Motion to Exclude and/or Limit the Testimony of Fiona Scott Morton (Dkt. 65).

**SIGNED** on July 11, 2024.

     SUSAN HIGHTOWER
     UNITED STATES MAGISTRATE JUDGE