# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| LUCID GROUP USA, INC., § | |
| *Plaintiff* § | |
| § | |
| v. § | |
| § | |
| MONIQUE JOHNSTON, et al., § | Case No. 1:22-CV-01116-RP |
| *Defendants* § | |
| § | |
| TEXAS AUTOMOBILE DEALERS § | |
| ASSOCIATION, § | |
| *Intervenor-Defendant* § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE**

Now before the Court are Plaintiff's Renewed Motion for Summary Judgment (Dkt. 77), State Defendants' Motion for Summary Judgment (Dkt. 78), and Intervenor-Defendant Texas Automobile Dealers Association's Motion for Summary Judgment (Dkt. 79), all filed March 22, 2024, and the associated response and reply briefs. By Text Order issued April 4, 2024, the District Court referred the motions to this Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

### I. Background

Plaintiff Lucid Group USA, Inc. brings this suit challenging the constitutionality of a Texas statute that prohibits it from owing or operating car dealerships to sell its own cars in the State of Texas.

1

### A. Facts

Lucid, based in Newark, California, is a manufacturer of electric cars. Complaint, Dkt. 1 ¶ 1. Lucid began manufacturing its first electric car, the Lucid Air, in 2019. *Id.* ¶ 13. Unlike traditional car manufacturers, Lucid does not use independent car dealers; instead, it sells its cars directly to consumers through its website and its own dealerships, which it calls "Studios." *Id.* ¶ 19. Lucid determined that this was the only viable way to establish its business. Edson Decl., Dkt. 77-1 at 10.[1] It explains: "As a startup still building production capacity and consumer awareness, Lucid's sales at this time are limited and would not support a network of independent franchised dealers and the earnings, commissions, or other payments that franchised dealers would require to enter into business." Dkt. 1 ¶ 27. Lucid contends that it sells its cars at "uniform and transparent prices, without haggling or upselling," and: "The result is a superior and seamless customer experience: without a middleman standing between Lucid and its customers." Dkt. 77 at 8.

Lucid operates a Studio in Plano, Texas and a facility in Houston, Texas, where it provides warranty and repair service to Lucid owners. Edson Decl., Dkt. 77-1 at 12; Edson Tr. at 158:5-8, Dkt. 77-1 at 42. Consumers who visit a Lucid Studio in Texas can learn about Lucid cars, view models, and take demonstration drives. Texas residents can reserve a Lucid Air through Lucid's website or at a Lucid-owned out-of-state Studio licensed to sell directly to consumers. Dkt. 1 ¶ 30. Customers arrange delivery, typically to a Lucid delivery center or directly to their home. *Id.*

Lucid seeks to sell new Lucid cars to consumers "from established and permanent physical locations in Texas," but the state prohibits motor vehicle manufacturers from owning dealerships. *Id.* ¶ 40. Since 1999, state law has prohibited carmakers from owning, operating, or controlling a motor vehicle dealership in Texas that sells "the same type of motor vehicle that . . . the

---

[1] Zachary Edson is Lucid's Vice President of Sales and Service. Dkt. 77-1 at 8.

manufacturer manufactures or distributes." TEX. OCC. CODE § 2301.476(c) (the "Prohibition" or "Statute"). Lucid alleges that the Texas Department of Motor Vehicles ("DMV"), which is responsible for enforcing the Statute, informed it in 2021 that the Statute prohibits Lucid from owning or operating a motor vehicle dealership within the State of Texas. Dkt. 1 ¶ 37.

**B. Litigation**

On November 1, 2022, Lucid sued DMV Motor Vehicle Division Director Monique Johnson, Executive Director Daniel Avitia, and Enforcement Division Director Corrie Thompson in their official capacities. Lucid alleges that the Prohibition, as applied against it, violates its substantive due process and equal protection rights under the Fourteenth Amendment to the United States Constitution. Lucid argues that the Prohibition "is pure economic protectionism for the benefit of Texas's existing auto dealers," *id.* ¶ 3, and is not rationally related to the advancement of any legitimate government interest. Lucid also argues that "prohibiting affiliates of manufacturers without independent franchised dealers like Plaintiff from owning or operating new motor-vehicle dealerships in Texas . . . arbitrarily distinguishes between classes that are similarly situated in all material respects." *Id.* ¶ 63. Lucid seeks a declaratory judgment that the enforcement of the Prohibition is unconstitutional as applied to it and seeks a permanent injunction. *Id.* at 17.

On December 20, 2022, the Texas Automobile Dealers Association ("TADA"), a trade association representing franchised new motor vehicle dealers in Texas, moved to intervene as a defendant "to advocate in support of the constitutionality of the State's statutes and regulations relating to the sale and distribution of motor vehicles to Texans through its franchise-based system." Dkt. 17 at 6. The District Court granted TADA's motion to intervene under Rule 24(b). Dkt. 36.

On June 21, 2023, the District Court denied Defendants' motion to dismiss under for failure to state a claim, finding that Lucid had alleged sufficient facts to plead plausible constitutional claims. Dkt. 47. The same day, the District Court also denied Lucid's motion for summary judgment—filed the same day as its Complaint—without prejudice as "premature." Dkt. 49 at 4. The parties then engaged in discovery. Lucid, Defendants, and Intervenor-Defendant TADA all move for summary judgment on Lucid's constitutional claims under Rule 56(a).

## II. Summary Judgment Standard

Summary judgment under Rule 56(a) is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When ruling on a motion for summary judgment, the court must view all inferences drawn from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

The moving party bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. When the non-movant bears the burden of proof at trial, "the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an

4

issue of material fact warranting trial." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015).

If the moving party meets the initial burden, the nonmoving party must "go beyond the pleadings" and designate "specific facts" in the record "showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *TIG Ins. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). Instead:

> The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.

*Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citations omitted). If the nonmoving party fails to make a showing sufficient to establish an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III.  Analysis

Lucid alleges that as applied to it, the Prohibition violates (1) its substantive due process rights to pursue a legitimate business, and (2) its equal protection rights by "arbitrarily" treating direct sales manufacturers like Lucid differently than traditional manufacturers who use independent franchised dealerships. Dkt. 1 ¶ 63. Lucid argues that it is entitled to summary judgment on both claims because the Prohibition is "a purely protectionist measure" to protect current motor vehicle dealerships in Texas that "furthers no legitimate state interest and is therefore unconstitutional." Dkt. 77 at 13.

Defendants and TADA argue that they are entitled to summary judgment on Lucid's substantive due process claim because Lucid has no constitutionally protected liberty interest in direct sales of motor vehicles to consumers in Texas. They also contend that even if Lucid had such a liberty interest, there are legitimate governmental reasons for the Prohibition. Defendants and TADA also argue that Lucid was not treated differently than other manufacturers, and TADA argues that Lucid lacks standing to bring this suit.

## A. Standing

The United States Constitution limits the jurisdiction of federal courts to deciding "Cases" and "Controversies." Art. III, § 2. A fundamental element of the case-or-controversy requirement is that a plaintiff, based on its complaint, must establish "standing" to sue. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Standing implicates the court's jurisdiction and must be addressed before determining whether a plaintiff has adequately stated claims against defendants. *Dep't of Educ. v. Brown*, 600 U.S. 551, 560 (2023).

To show standing, a plaintiff must prove three elements: (1) "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned up).

Lucid shows that: (1) it is a manufacturer of motor vehicles and operates Studios in Texas; (2) it seeks to open dealerships and sell its cars directly to consumers in Texas; and (3) the DMV informed Lucid that it is prohibited from doing so. *See* Edson Decl., Dkt. 77-1 at 12-13; Dkt. 78

at 7; Dkt. 1 ¶ 37. Based on these undisputed facts, Lucid has standing to challenge the Prohibition. *See Lujan*, 504 U.S. at 561-62 (stating that if "the plaintiff is himself" an object of the law or regulation, "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it").

**B.  Substantive Due Process Claim**

The Due Process Clause prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To prevail on a substantive due process claim as alleged here, the plaintiff must show (1) a violation of a property or liberty interest protected by the Fourteenth Amendment, and (2) that the governmental action was not rationally related to a legitimate governmental interest. *Simi Inv. Co. v. Harris Co.*, 236 F.3d 240, 249-51 (5th Cir. 2000). "Only if such government action is 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare,' may it be declared unconstitutional." *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996) (quoting *Vill. of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926)).

**1.  Liberty Interest**

"The first inquiry in every due process challenge—whether procedural or substantive—is whether the plaintiff has been deprived of a protected interest in property or liberty." *Edionwe v. Bailey*, 860 F.3d 287, 292 (5th Cir. 2017). Lucid alleges that it has a due process right to pursue a "legitimate business" and that the Prohibition violates that right because it is "not rationally related to the advancement of any legitimate governmental interest." Dkt. 1 ¶¶ 54, 56.

Defendants and TADA contend that Lucid has no constitutionally protected liberty interest in the direct sales of motor vehicles to consumers in Texas. Dkt. 78 at 24. Lucid responds that this argument "has already been rejected by the Court." Dkt. 82 at 23. Lucid refers to the District

7

Court's June 21, 2023 Order denying Defendants' Rule 12(b)(6) motion to dismiss. In that Order, the District Court held that Lucid pled sufficient facts to allege a protectable liberty interest under the Due Process Clause at the motion to dismiss stage. Dkt. 47 at 7-8. The Court did not hold that Lucid's liberty interest actually had been violated. *See id.* At the summary judgment stage, the plaintiff must "go beyond the pleadings" and designate "specific facts" in the record "showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Lucid cannot rely on the Court's denial of Defendants' motion to dismiss to prove its case on summary judgment.

Lucid also is mistaken that the law-of-the-case doctrine prevents a district court from reconsidering its prior rulings.

> The law-of-the-case doctrine does not operate to prevent a district court from reconsidering prior rulings. A court has the power to revisit prior decisions of its own in any circumstance. The doctrine directs a court's discretion, it does not limit the tribunal's power. The law-of-the-case doctrine is a rule of convenience designed to prevent unnecessary reconsideration of previously decided issues. It is equally clear, though, that the rule yields to adequate reason.
>
> Further, we have rejected the argument that the doctrine precludes a grant of summary judgment following a prior denial. An order denying summary judgment is interlocutory, and leaves the trial court free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.

*Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010) (cleaned up).

Accordingly, the Court considers the first element of Lucid's substantive due process claim: whether Lucid has established a violation of a liberty interest protected by the Fourteenth Amendment. *Simi Inv. Co.*, 236 F.3d at 249. The "right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." *Truax v. Raich*, 239 U.S. 33, 41 (1915). Courts have recognized a constitutionally protected liberty interest in "pursuing a chosen

8

occupation,"[2] "to work and earn a living,"[3] and "operating a legitimate business."[4] But to show that such a liberty right was violated, Lucid most demonstrate that the Prohibition "effectively foreclosed" it from operating its business in Texas. *Ghedi v. Mayorkas*, 16 F.4th 456, 467 (5th Cir. 2021). "[A] plaintiff's liberty interest in pursuing a specific profession is only violated if he has been completely prevented from working in that field." *Adams v. City of Harahan*, 95 F.4th 908, 916 (5th Cir. 2024).

The Prohibition precludes Lucid from operating, controlling, or owning a dealership in Texas that sells its own cars. But Lucid still may sell its cars directly to Texas consumers through its website, its Studios located outside the state, and unaffiliated franchised or unfranchised dealerships in Texas. Dkt. 1 ¶¶ 2, 30; Edson Decl., Dkt. 77-1 at 10-13. Lucid is not foreclosed from operating its business in Texas. *See Ghedi*, 16 F.4th at 467 (finding that businessman's purported placement on Transportation Security Administration's selectee list did not violate his due process right to freely practice his chosen profession when he failed to show that extra screenings "effectively foreclosed" him from practicing his occupation). Precedent "makes clear that a plaintiff's liberty interest remains intact when the Government simply makes his efforts to remain in a given vocation more difficult or even 'nearly impossible.'" *Adams*, 95 F.4th at 916 (quoting *Ghedi*, 16 F.4th at 467). Lucid does not show a violation of a substantive due process right under the Due Process Clause.

**2. Rational Basis**

Even if Lucid had shown a violation of a liberty interest protected by the Fourteenth Amendment, the Fifth Circuit has already determined that there is a rational basis for the

---

[2] *Stidham v. Texas Comm'n on Priv. Sec.*, 418 F.3d 486, 491 (5th Cir. 2005).

[3] *Martin v. Mem'l Hosp. at Gulfport*, 130 F.3d 1143, 1148 (5th Cir. 1997).

[4] *State of Tex. v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995).

Prohibition. In *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493 (5th Cir. 2001), Ford challenged the Prohibition's predecessor statute,[5] which also prohibited carmakers from operating as motor vehicle dealers in Texas. Ford wanted to sell preowned motor vehicles through a website and alleged that Section 5.02C(c) violated the dormant Commerce Clause,[6] Equal Protection Clause, its First Amendment speech right, and its procedural due process rights. *Id.* at 498. Ford argued that Section 5.02C(c) was unconstitutional because it discriminated against out-of-state companies and "amount[ed] to nothing more than economic protectionism." *Id.* at 500. Ford also argued that the statute violated its equal protection rights because Texas had no rational basis for classifying manufacturers differently than dealers. *Id.* at 510. This Court granted the state's motion for summary judgment as to all of Ford's claims. *Id.* at 498.

On appeal, the Fifth Circuit held that Texas could constitutionally prohibit manufacturers from controlling dealers. *Id.* at 499-505. The court noted that the legislative history of Section 5.02C(c) indicated "the legislature's intent to prevent manufacturers from utilizing their superior market position to compete against dealers in the retail car market," and that the Texas Legislature's concern "was fueled by the recent opening of several dealerships owned by manufacturers and the perceived detriment to the public from vertical integration of the automobile market." *Id.* at 500. The court rejected Ford's argument that the statute did not protect any legitimate state interests:

> The State's asserted purposes for passing § 5.02C(c)—to prevent vertically integrated companies from taking advantage of their incongruous market position and "to prevent frauds, unfair practices, discrimination, impositions, and other abuses of our citizens"—are legitimate state interests.

---

[5] Tex. Rev. Civ. Stat. Ann. art. 4413(36), § 5.02C(c) (Vernon 1999) (repealed 2003).

[6] "The dormant Commerce Clause, also known as the negative Commerce Clause, prohibits states from engaging in economic protectionism." *Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 724-25 (5th Cir. 2004).

*Id.* at 503 (citing *Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 43 (1980) ("Discouraging economic concentrations and protecting the citizenry against fraud are undoubtedly legitimate state interests.")). The court added: "Irrespective of Ford's or this Court's view of the law's potential effect, there is certainly evidence from which a reasonable legislator could believe § 5.02C(c) would further the State's legitimate interest in preventing manufacturers from utilizing their superior market position to compete against dealers." *Id.* at 504. Thus, the court rejected Ford's equal protection argument that Texas had no rational basis for classifying manufacturers differently: "[W]e 'have no hesitancy in concluding that [§ 5.02C(c)] bears a reasonable relationship to the State's legitimate purpose in controlling the [automobile] retail market.'" *Id.* at 510 (quoting *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 125 (1978)).

Three years later, the Fifth Circuit addressed another constitutional challenge to the state's prohibition on manufacturers owning or operating dealerships in Texas. In *Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717 (5th Cir. 2004), a truck manufacturer seeking to sell its used trucks from its dealerships in Texas argued that Section 2301.476(c) of the Texas Occupations Code violated the dormant Commerce Clause and the Equal Protection Clause. Like Lucid, the truck manufacturer argued that Section 2301.476(c) was unconstitutional "economic protectionism." *Id.* at 719. Again, this Court granted summary judgment in favor of the state. *Id.*

On appeal, the Fifth Circuit held that Section 2301.476(c) is "legitimate economic regulation." *Id.* at 725. The court stated that it had already "declared" in *Ford* that Texas had legitimate state interests for enacting Section 2301.476(c)'s predecessor: to prevent vertically integrated companies from taking advantage of their market position and to prevent frauds, unfair practices, discrimination, impositions, and other abuses of its citizens. *Id.* at 728. The court reasoned: "Although International maintains that the Legislature had no credible evidence to believe that

11

manufacturers could use their disproportionate market power to the disadvantage of dealers, we may not now revisit *Ford's* conclusion that the Legislature did not act irrationally in banning manufacturer control of dealers." *Id.*[7]

This Court also may not revisit *Ford's* conclusion that the Texas Legislature had legitimate reasons for enacting the Prohibition and did not act irrationally in banning manufacturer control of dealers. *Id.*; *see also Tesla, Inc. v. La. Auto. Dealers Ass'n*, 677 F. Supp. 3d 417, 456 (E.D. La. 2023) (relying on *Ford* and holding that Louisiana's direct sales ban was based on legitimate governmental reasons and thus passed rational basis review), *appeal docketed*, No. 23-30480 (5th Cir. July 18, 2023).[8] Because a rational relationship exists between Texas's prohibition and advancement of Texas's interest in regulating the retail vehicle market, Lucid's substantive due process claim fails as a matter of law.

> Whether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

*FCC v. Beach Commc'ns, Inc.,* 508 U.S. 307, 313 (1993).

---

[7] Lucid argues that the Court should ignore *Ford* and *Bray* and rely instead on the Fifth Circuit's opinion in *St. Joseph Abbey v. Castille*, 712 F.3d 215 (5th Cir. 2013). Dkt. 77 at 6-7; Dkt. 82 at 11, 21. In *St. Joseph Abbey*, an abbey of the Benedictine Order of the Catholic Church challenged the constitutionality of a rule issued by the Louisiana Board of Funeral Directors that granted funeral homes an exclusive right to sell caskets in Louisiana. The court held that the rule violated the abbey's procedural due process and equal protection rights because the funeral directors "offered no rational basis for their challenged rule" and determined that the rule was based on pure economic protectionism of the funeral directors. *Id.* at 227. Lucid's reliance on *St. Joseph Abbey* is misplaced because the court simply held that "pure economic protectionism is not by itself a legitimate state interest." *Hines v. Quillivan*, 982 F.3d 266, 274 (5th Cir. 2020) (explaining the holding in *St. Joseph Abbey*). In *Ford*, the Fifth Circuit rejected the argument that the Prohibition is based purely on economic protectionism. *See Ford*, 264 F.3d at 503.

[8] The Fifth Circuit heard oral argument on April 2, 2024. Its opinion remains pending.

## C. Equal Protection Claim

Lucid argues that the Prohibition violates its equal protection rights because it arbitrarily distinguishes between carmakers without independent franchised dealers like Lucid and those with independent franchised dealers without any rational basis for the differential treatment. Dkt. 1 ¶ 63.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To establish an equal protection claim, the plaintiff "must first show that two or more classifications of similarly situated persons were treated differently under the statute." *Duarte v. City of Lewisville, Tex.*, 858 F.3d 348, 353 (5th Cir. 2017) (citation omitted); *see also Beeler v. Rounsavall*, 328 F.3d 813, 816 (5th Cir. 2003) ("As a prerequisite to such a claim, the plaintiff must prove that similarly situated individuals were treated differently.").

If that threshold element is established, then the court determines the appropriate level of scrutiny to apply. "Strict scrutiny is required if the legislative classification operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution." *Richard v. Hinson*, 70 F.3d 415, 417 (5th Cir. 1995) (citing *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973)). If neither a suspect class nor a fundamental right is implicated, the classification need only bear a rational relation to a legitimate governmental purpose. *Duarte*, 858 F.3d at 354. Under the rational basis standard, a legislative classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns*, 508 U.S. at 313. "When social or economic legislation is at issue, the Equal Protection

Clause allows the States wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes." *City of Cleburne*, 473 U.S. at 440.

To prevail on its equal protection clause claim, Lucid must show that it was (1) similarly situated to manufacturers with franchised dealerships in Texas, and (2) treated differently than those manufacturers under the Statute. *Duarte*, 858 F.3d at 353; *Beeler*, 328 F.3d at 816. Lucid cannot do so. The undisputed facts show that Lucid is being treated the same under the Statute as car manufacturers with franchised dealerships. The statute precludes all manufacturers from selling vehicles they make from their own dealerships in Texas. *See Bray*, 372 F.3d at 726 (finding that "Section 2301.476 does not discriminate between similarly situated in-state and out-of-state interests . . . motor vehicle manufacturers, whether Texas-based or not, could not own, operate, control, or act as a dealer"); *Ford*, 264 F.3d at 511 (affirming summary judgment on Ford's equal protection claim challenging Section 2301.476(c)'s predecessor statute when Ford failed to show that any restriction on its involvement in the retail market was not similarly placed on other carmakers).[9] Because Lucid has not been treated differently under the statute, its equal protection claim fails as a matter of law.

**D.   Conclusion**

Because Lucid does not show that its constitutional rights were violated, Defendants and TADA are entitled to summary judgment.

---

[9] *See also Rountree v. Dyson*, 892 F.3d 681, 685 (5th Cir. 2018) (affirming dismissal of business owner's equal protection claim when "he did not sufficiently allege that he has been treated differently from others similarly situated"); *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 414 (5th Cir. 2015) (affirming summary judgment on plaintiff's equal protection claim when she did not show she was treated differently than similarly situated peers); *Beeler*, 328 F.3d at 817 (finding that applicant for new wine and beer permit was not treated differently from neighbor applying for renewal permit and thus there was no equal protection violation); *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999) ("[T]o establish an equal protection claim the plaintiff must prove that similarly situated individuals were treated differently.").

## IV. Recommendation

This Magistrate Judge **RECOMMENDS** that the District Court (1) **DENY** Plaintiff Lucid Group USA Inc.'s Renewed Motion for Summary Judgment (Dkt. 77); (2) **GRANT** State Defendants' Motion for Summary Judgment (Dkt. 78); (3) **GRANT** Intervenor-Defendant Texas Automobile Dealers Association's Motion for Summary Judgment (Dkt. 79); and (4) enter judgment for Defendants and Intervenor-Defendant.

**IT IS ORDERED** that the Clerk remove this case from this Magistrate Judge's docket and return it to the docket of the Honorable Robert Pitman.

## V. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on July 22, 2024.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE